**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0-12-cv-60796-WJZ**

KEVIN LAWRENCE, individual, and AYSHEA
LAWRENCE, an individual, on behalf
of themselves and all others similarly situated,

      Plaintiff,

vs.                                    **CLASS ACTION**

GILBERT GARCIA GROUP, P.A., a
Florida professional association,

      Defendant.

_____/

**MEMORANDUM  IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AMENDED COMPLAINT**

      Plaintiffs, Kevin Lawrence, an individual, and Ayshea Lawrence, an individual

(hereinafter collectively referred to as "the Lawrences"), on behalf of themselves and all others

similarly situated, by and through their undersigned attorney, pursuant to the Rule 7.1C, Local

Rules of the United States District Court, Southern District of Florida, file this their

Memorandum of Law in Opposition to the Motion to Dismiss Amended Complaint [DE 8] filed

herein by filed herein by Defendant, Gilbert Garcia Group, P.A., a Florida professional

association ("Gilbert Garcia"):

**I.  INTRODUCTION**

*A.  SYNOPSIS OF LITIGATION*

*1.  Review of Amended Complaint*

*a.  Description of Mortgage Debt of the Lawrences*

1

In the instant action, the Lawrences have brought a claim against Gilbert Garcia seeking the recovery of damages under 15 U.S.C. §1692 *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA") which prohibits debt collectors engaging in abusive, deceptive and unfair practices. In particular, the Lawrences have alleged that Gilbert Garcia failed to provide the Lawrences with a written notice providing the Lawrences as consumers with a so-called "validation notice" mandated under 15 U.S.C. §1692g(a) [Complaint - ¶ 30].

According to the allegations of the Amended Complaint, on April 26, 2005, the Lawrences executed and delivered to Countrywide Home Loans ("Countrywide"), a promissory note ("Lawrence Mortgage Note") and a mortgage ("Lawrence Mortgage") securing payment of the Lawrence Mortgage Note [Complaint - ¶ 12]. The Lawrence Mortgage encumbered the residence of the Lawrences, to wit: a single family residence located at 6671 Fern Street, Margate, Florida 33063 ("Lawrence Residence") [Complaint - ¶ 13].

Under the Lawrence Mortgage Note, the Lawrences as consumers were required to pay money to Countrywide or its assignee on a monthly basis under the terms and provisions more specifically set forth therein.  The obligation to pay money under the Lawrence Promissory Note arose from a transaction to purchase or refinance the Lawrence Residence which was used for personal, family and household purposes of the Lawrences ( i.e., the Lawrences lived at the Lawrence Residence) [Complaint - ¶ 14].

### b. Mortgage Debt Collection Activities of Defendant

#### i. Filing of Foreclosure Action by Defendant

On or about February 29, 2012, Gilbert Garcia filed a civil action to foreclose the Lawrence Mortgage in that certain case styled "*The Bank of New York Mellon, etc. v. Kevin*

*Lawrence, et al.;* Circuit Court, 17th Judicial Circuit, in and for Broward County, Florida; Case No.:CACE-12-5618 (11) ("Lawrence Foreclosure Proceeding"). A copy of the Summons, Complaint and Notice of Lis Pendens, with exhibits and attachments thereto (hereinafter collectively referred to as "Foreclosure Complaint") filed in the Foreclosure Proceeding, is attached to the Amended Complaint as Exhibit "A."

The Lawrence Foreclosure Proceeding constituted an attempt on the part of Gilbert Garcia  to collect a debt purportedly owed by the Lawrences under the Lawrence Promissory Note.  In particular, the Foreclosure Complaint in the Lawrence Foreclosure Proceeding provided *inter alia* as follows with respect to the collection of a debt:

- "Defendants **owe** Plaintiff $220,114.94 that is due and owing on principal, plus interest from and after October 1, 2007, and title search expenses for ascertaining necessary parties to this action."

(Foreclosure Complaint - ¶9)

- "For purposes of **collection** and foreclosure, the Plaintiff has retained the undersigned law firm and is obligated to pay said law firm a reasonable fee for their services and additional costs.

(Foreclosure Complaint - Page 3)<br>(emphasis added by Plaintiffs)

Pursuant to the Foreclosure Complaint in the Lawrence Foreclosure Proceeding, Gilbert Garcia on behalf of the creditor specifically requested a monetary judgment as part of the relief sought in the lawsuit:

"3.    That the Court reserve jurisdiction to enter a deficiency judgment for any portion of a deficiency, should one exist against any maker of the note, all

3

> in accordance with Chapter 702, Florida Statutes Annotated, unless any
> Defendant personally liable shall have been discharged from liability
> under the subject note pursuant to the provisions of the Bankruptcy Code
> 11 U.S.C. Section 101, et.seq."
>
> (Complaint - Page 3)

Gilbert Garcia did not communicate with the Lawrences concerning the debt represented by the Lawrence Promissory Note prior to the filing of the Lawrence Foreclosure Proceeding [Complaint - ¶ 19].

Gilbert Garcia attached as an exhibit to the Foreclosure Complaint in the Lawrence Foreclosure Proceeding a document entitled "Notice Required by the Fair Debt Collection Practices Act" ("FDCPA Validation Notice"). A copy of the FDCPA Validation Notice is attached as Exhibit "B" to the Amended Complaint.

The FDCPA Validation Notice failed to provide complete and accurate disclosures mandated by the FDCPA including:

- the amount of the debt as required under 15 U.S.C. §1692g(a)(1);

- the name of the creditor to whom a debt was owed as required under 15 U.S.C. §1692g(a)(2); and

- the rights of consumers with respect to disputing consumer debts as required under 15 U.S.C. §1692g(a)(3) insofar as Gilbert Garcia required that the consumer dispute the debt in writing.

*ii. Post-Complaint Filings by Defendant*

Subsequent to service of the Complaint in the Lawrence Foreclosure Proceeding, Gilbert Garcia sent to the Lawrences various motions and other papers which were filed in the Lawrence Foreclosure Proceeding ("Post-Complaint Filings") [Complaint - ¶ 23]. The Post-Complaint

4

Filings included *inter alia* a paper entitled "Plaintiff's Motion for Summary Judgment of Foreclosure and Request for Award of Attorney's Fees" ("Motion for Summary Judgment") [Amended Complaint - ¶ 24]. A copy of the Motion for Summary Judgment is attached as Exhibit "C" to the Amended Complaint.

Since the service of the Complaint in the Lawrence Foreclosure Proceeding, notwithstanding communication with the Lawrences in the form of the Post-Complaint Filings, Gilbert Garcia did not provide the Lawrences with a compliant written notice providing the Lawrences as consumers with the information mandated under 15 U.S.C. §1692g(a) [Amended Complaint - ¶ 26].

### 2. *Overview of Motion to Dismiss*

In response to the Amended Complaint, Gilbert Garcia has asserted two arguments in favor of dismissal. First, Gilbert Garcia claims that it was not required to provide the disclosures under 15 U.S.C. §1692g(a) as the papers filed in the Lawrence Foreclosure Proceeding — including the Post-Complaint Filings — did not constitute a "collection communication" requiring the mandated disclosure [Motion to Dismiss,  pp. 3-7]. Secondly, Gilbert Garcia asserts that mortgage debt collection was not within the ambit of the FDCPA [Motion to Dismiss, pp. 7-8].

As will be more fully argued below, the position of Gilbert Garcia that the written notice mandated under 15 U.S.C. §1692g(a) was not required is without legal authority and is contrary to the unambiguous language of the FDCPA. Moreover, the argument that mortgage debt collection is outside of the FDCPA is at odds with the most recent pronouncement of the Eleventh Circuit in *Reese v. Ellis, Painter, Ratterree & Adams*, 678 F.3d 1211 (11th Cir. 2012).

## B. SYNOPSIS OF APPLICABLE LAW

### 1. *SCOPE AND PURPOSE OF FDCPA*

The FDCPA was enacted to protect consumers from and to eliminate "abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). The FDCPA also protects law abiding debt collectors who refrain from using abusive debt collection practices from being competitively disadvantaged. Id. The FDCPA was enacted by Congress after finding "abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," 15 U.S.C. §1692(a). Moreover, Congress found that "[a]busive debt collection practices contribute to a number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id.

The FDCPA enumerates general standards of proscribed conduct, defines and restricts abusive collection acts as detailed in the Act, and provides for specific disclosure rights for consumers. Such consumer rights include the requirement that debt collectors provide a so-called "validation notice," which discloses the amount of debt, the name of the creditor, a statement that the validity of the debt will be assumed unless disputed by the consumer within thirty (30) days from receipt of the notice, and an obligation to verify the debt, including the disclosure of the name and address of the original creditor, if the consumer so requests. 15 U.S.C. §1692g; *see*, *Russell v. Equifax*, 74 F.3d 30, 34 (2nd Cir. 1996); *Bleich v. Revenue Maximization Group*, 233 F. Supp.2d 496 (E.D. N.Y. 2002). In addition to consumer disclosure rights, 15 U.S.C.§1693 provides for a broad proscription against "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or information concerning a consumer." 15 U.S.C. §1693e(10).

## 2.  FDCPA AS A STRICT LIABILITY STATUTE

The FDCPA is a strict liability statute. As such, there are no unimportant or non-actionable violations. *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2nd Cir. 1993);  *Taylor v. Perrin, Landry, de Launay & Durand*, 103 F.3d 1232 (5th Cir. 1997). Further, the FDCPA, as with all consumer statutes, is afforded broad and liberal interpretation in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Financial Systems, Inc.*, 831 F. Supp. 941, 944 (D.Conn. 1993); *cf.*, *Rodash v. AIB Mortgage Company*, 16 F.3d 1142, 1144 (11th Cir. 1994) abrogated on other grounds by *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996); *Schroder v. Suburban Coastal Corporation*, 729 F.2d 1371,1380 (11th Cir. 1984).

## 3.  APPLICATION OF THE "LEAST SOPHISTICATED CONSUMER" STANDARD

The United States Court of Appeals for the 11th Circuit established the standard by which most violations of the FDCPA are analyzed, i.e., whether the communication by the debt collector would mislead the "least sophisticated consumer." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172—75 (11th Cir. 1985). Under the governing standard, a court need not determine whether the named plaintiff or other putative plaintiffs were misled or were confused by the notice, as the standard is whether the 'least sophisticated consumer' would have been misled. *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 667 (M.D. Fla. 1999). The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA protects all consumers, "the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993). See, also, *Taylor v. Perrin, Landry, de Launay v Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997); U.S. v. National Financial Services, Inc., 98 F.3d 131, 136 (4th Cir. 1996); *Russell v. Equifax, A.R.S.* 74 F.3d 30 (2d Cir.

1996); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir. 1993); *Graziano v. Harrison*, 950 F.2d 107, 111 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225—26 (9th Cir. 1988). The actions of Gilbert Garcia as alleged in the Amended Complaint herein must be evaluated from the standpoint of the least sophisticated consumer.

## II.  STANDARD OF REVIEW

Until recently, federal courts routinely followed the rules set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, pursuant to the recent United States Supreme Court opinion in *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (2007), to survive a motion to dismiss, a complaint must now contain factual allegations that sufficiently "raise a right to relief above a speculative level." *Bell Atlantic Corporation*, 127 S. Ct. at 1965.  As under *Conley*, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Id. at 1964-65; *see*, *Stephens v. Dept. of Health and Human Services*, 901 F.2d 1571, 1573 (11th Cir.1990). A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all the necessary factual allegations. *Id*.  Accordingly, a well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id*. at 1965; *Iqbal v. Ashcroft*, 566 U.S. 662, 129 S.Ct. 1937, 1940 (2009)[pleading standards do not require "detailed factual allegations"].

8

### III.   LEGAL ARGUMENT

**A.  THROUGH THE PROSECUTION OF THE LAWRENCE FORECLOSURE PROCEEDING, GILBERT GARCIA IS A "DEBT COLLECTOR" AS THE TERM IS DEFINED UNDER 15 U.S.C. §1692a(6) TO THE EXTENT THAT GILBERT GARCIA IS OBLIGATED TO COMPLY WITH ALL REQUIREMENTS  OF THE FDCPA, INCLUDING PROVIDING THE STATUTORILY-MANDATED DISCLOSURES OF 15 U.S.C. §1692g.**

*1. OVERVIEW OF FDCPA COVERAGE*

Whether a person is said to be covered by the FDCPA is determined largely by whether this person satisfies the definition of the word "debt collector." *See,* 15 U.S.C. §1692a(6); *see, Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489 (1995). 15 U.S.C. §1692a(6) provides the following definition:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce of the mails in any business the principal purpose of which is the collection of any debts, or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. §1692a(6)

In its Motion to Dismiss, Gilbert Garcia claims the prosecution of a foreclosure action is not "debt collection activity within the scope of the FDCPA." (Motion to Dismiss, p.7).  For reasons best known to Gilbert Garcia, it chose to argue this threshold issue in the latter part of its Motion.  The Lawrences consider the determination of whether Gilbert Garcia was acting as a "debt collector" with respect to the prosecution of the Lawrence Foreclosure Proceeding to the first and foremost issue for resolution. Indeed, if Gilbert Garcia was not acting as a "debt collector" within the meaning of 15 U.S.C. §1692a(6), all other issues raised by Gilbert Garcia are moot.

### 2. *ANALYSIS OF DEBT COLLECTION ACTIVITY OF GILBERT GARCIA*

The logical starting point in determining whether Gilbert Garcia was a "debt collector"

with respect to the Lawrence Foreclosure Proceeding is to review the court filings made by Gilbert

Garcia. Firstly, the Complaint in the Lawrence Foreclosure Proceeding provided *inter alia* as

follows with respect to the collection of a debt from the Lawrences :

- "Defendants **owe** Plaintiff $220,114.94 that is due and owing on principal, plus interest from and after October 1, 2007, and title search expenses for ascertaining necessary parties to this action."

  (Foreclosure Complaint - ¶9)
  [emphasis added by Plaintiffs]

- "For purposes of **collection** and foreclosure, the Plaintiff has retained the undersigned law firm and is obligated to pay said law firm a reasonable fee for their services and additional costs.

  (Foreclosure Complaint - ¶3)
  [emphasis added by Plaintiffs]

Moreover, the Foreclosure Complaint in the Lawrence Foreclosure Proceeding specifically

requested a monetary judgment as part of the relief sought:

"3.     That the Court reserve jurisdiction to enter a deficiency judgment for any
portion of a deficiency, should one exist against any maker of the note, all
in accordance with Chapter 702, Florida Statutes Annotated, unless any
Defendant personally liable shall have been discharged from liability unde
the subject note pursuant to the provisions of the Bankruptcy Code 11
U.S.C. Section 101, et.seq."

(Foreclosure Complaint - Page 3)

Likewise, the FDCPA Validation Notice which was an attachment to the Foreclosure

Complaint provides the following acknowledgment by Gilbert Garcia that it was a "debt

collector" :

10

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY**

**INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

(Foreclosure Complaint - Exhibit "B")
[emphasis in original]

In its Motion to Dismiss, Gilbert Garcia relies on the unpublished decision of *Warren v. Countrywide Home Loans, Inc.,* 342 Fed.Appx. 458 (11th Cir. 2009) for the proposition that a mortgage foreclosure action does not qualify as a debt collection activity. The actual holding of the unpublished opinion in *Warren* was that a "foreclosure sale" of a home is not debt collection for purposes of §1692g ["In short, since foreclosing on a home is not debt collection for purposes of §1692g, Warren did not, and could not, state a claim under that provision based on Countrywide's foreclosure sale of his home."].  *Warren* specifically involved only a claim that a security holder violated the FDCPA "by failing to respond to [the debtor's] request for verification of his debt before [the lender] proceeded with the foreclosure sale of his home." *Id.* at 460. The Eleventh Circuit reasoned that "enforcement of a security interest *through the foreclosure process* is not debt collection for purposes of the Act." *Id.* [emphasis added].

The *Warren* court did not address the facts of the present case — whether a non-creditor law firm (as opposed to the security holder itself) falls within the ambit of the FDCPA as a "debt collector" when it seeks not only to foreclose a security interest but to recover a money judgment or deficiency as well. If Gilbert Garcia had filed an action to simply foreclose a mortgage, Gilbert Garcia would most likely be outside the FDCPA. However, by including as part of the relief sought in the Lawrence Foreclosure Proceeding the reservation of jurisdiction to enter a deficiency judgment, Gilbert Garcia stepped into the role of "debt collector" within the meaning of 15 U.S.C.

11

§1692a(6).

In the recent decision of *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211 (11th Cir. 2012), the Eleventh Circuit held that a foreclosure law firm was a "debt collector" under the FDCPA when it demanded payment of the balance of the note secured by a "security deed" and repeatedly stated that it was a debt collector. The Court initiated its analysis by recognizing the difference between a promissory note and security interest. *Id.* at 1216.

On the distinction, the Court stated:

> A promissory note is a contract evidencing a debt and specifying terms under which one party will pay money to another. *See Black's Law Dictionary* 1089 (8th ed. 2004) (defining "promissory note" as an "unconditional" written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person"); *see also* Ga. Code. Ann. § 11-9-102(a)(64) ("Promissory note" means an instrument that evidences a promise to pay a monetary obligation ...."). By contrast, a security interest is not a promise to pay a debt; it is an interest in some collateral that a lender can take if a debtor does not fulfill a payment obligation. *See Black's Law Dictionary* 1384 (8th ed. 2004) (defining a "security" as "[c]ollateral given or pledged to guarantee the fulfillment of an obligation"). A mortgage is a type of security interest with real property as the collateral. *See Black's Law Dictionary* 1031 (8th ed. 2004); *see also* Ga.Code Ann. §44-14-30 ("A mortgage in this state is only security for a debt and passes no title.").

> *Id.* at 1216.

The Court recognized that whether the obligation of the homeowner to pay off a promissory note was a "debt" does not end the inquiry. Rather, as the Court framed it, the pertinent question "was whether the Ellis law firm's letter and enclosed documents are an attempt to 'collect' a debt within the meaning of the FDCPA." *Id.* at 1217. In reviewing the communication by the Ellis law firm, the Court took note of the fact that the Ellis law firm had demanded "full immediate payment of all amounts due." Similar to Gilbert Garcia in the instant case, the Ellis law firm also provided

the statutorily mandated disclosures under 15 U.S.C. §1692e(11) when it stated *inter alia*: "THIS

LAW FIRM IS ACTING AS A DEBT COLLECTOR AND ATTEMPTING TO COLLECT A

DEBT." *Id.*

In an attempt to avoid liability under the FDCPA, the Ellis law firm argued in part that the

subject communications were not debt collection activity because the Ellis law firm intended

merely to inform the property owner that Ellis law firm intended to foreclose a security deed in a

non-judicial foreclosure. *Id.* The Eleventh Circuit cast the argument of the Ellis law firm as

follows:

> In other words, we should ignore the language in the letter and documents that
> demands payment on the promissory note in favor of what the firm says was the
> purpose (of the firm or of the letter and documents it sent, or both). If we will do
> that, the firm argues, we will see that the letter and documents were not an attempt
> to collect a debt within the meaning of §1692e but merely an attempt to enforce a
> security interest.
>
> *Id.*

The Eleventh Circuit rejected the Ellis law firm's position because it "wrongly assumes that

a communication cannot have dual purposes." *Id.*  In its holding, the Court stated in a pointed

manner:

> The rule the Ellis law firm asks us to adopt would exempt from the
> provisions of §1692e any communication that attempts to enforce a security interest
> regardless of whether it also attempts to collect the underlying debt. **That rule
> would create a loophole in the FDCPA. A big one.** In every case involving a
> secured debt, the proposed rule would allow the party demanding payment on the
> underlying debt to dodge the dictates of §1692e by giving notice of foreclosure on
> the secured interest. The practical result would be that the Act would apply only to
> efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law
> firm) could harass or mislead a debtor without violating the FDCPA. That can't be
> right. It isn't.
>
> *Id.* at 1217 - 1218

13

(emphasis added by Plaintiffs)

As reflected above, the Eleventh Circuit emphatically recognized that a collection law firm such as Gilbert Garcia could evade all requirements of the FDCPA by simply omitting the validation notice under 15 U.S.C. §1692g through an argument that the underlying debt was secured by a mortgage or other instrument.  In the instant case, it is clear that the Lawrence Foreclosure Proceeding had two purposes: to foreclose on the Lawrence Residence and, if necessary, to collect a deficiency.   As such, the prosecution of the Lawrence Foreclosure Proceeding was an activity subject to the requirements of the FDCPA.

**B.  THE COLLECTION LAW FIRM DID NOT PROVIDE THE LAWRENCES WITH THE STATUTORILY MANDATED DISCLOSURE OF VALIDATION RIGHTS UNDER 15 U.S.C. §1692g EITHER IN THE VALIDATION NOTICE OR IN THE POST-COMPLAINT FILINGS IN THE LAWRENCE FORECLOSURE PROCEEDING.**

*1.  Overview of validation rights of consumers under the FDCPA.*

15 U.S.C. §1692g provides the following:

> Within five days after initial communication with the consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing - (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification of judgment will be mailed to the consumer by the debt collector, and (5) that a statement upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §1692g(a).

The validation requirement of the FDCPA was considered by Congress to be a "significant feature" of the Act. S.Rep. No. 382 at 4. The validation process was intended to minimize instances of mistaken identity of the debtor or mistakes over the amount or existence of the debt; "this provision will eliminate the recurring problem of collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." Id. In reviewing the intent of Congress with respect to the validation requirements of the FDCPA, it is recognized that: "[t]he FDCPA imposed an affirmative obligation on the defendants to properly inform the plaintiff of her statutory rights to dispute the validity of the debt and of the defendant's own obligation in the event she timely disputed the debt in writing." Reed v. Smith, Smith & Smith, 1995 WL 907764, *3 (M.D. La.1995).

### 2. Effect of 2006 FDCPA Amendment

In 2006, Congress amended the FDCPA to provide:

(d) LEGAL PLEADINGS. — A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a). [1]

15 U.S.C. §1692g(d).

In discussing the 2006 amendment, one treatise on the FDCPA identified the potential problem created by the so-called "validation carve-out":

A 2006 amendment to the FDCPA provided this new language to section 1692g: a formal pleading is not a communication triggering the obligation to provide the debt verification rights notice, postponing the requirements to provide the notice. This

---

[1] The amendment effectively codified the ruling of the 11th Circuit in Vega v. McKay, 351 F.3d 1334 (11th Cir. 2003) which held that a complaint and summons did not qualify as an "initial communication" for purposes of 15 U.S.C. §1692g(a).

amendment overruled in part the rulings in Second and Seventh Circuit decisions. While the amendment should put an end to the confusing practice by some debt collectors or providing the debt verification rights notice in or with a summons and complaint, it may raise some legal uncertainty. For example, the term, "formal pleading" is not defined. Its ordinary meaning would apply to complaints, answers and counterclaims. This should mean that the notice must be provided at the discovery stage or motion stage of the litigation unless settlement discussions trigger the notification requirement before that. It is common for consumers to call debt collectors upon receipt of a debt collection complaint to explain errors and discuss their options. This phone call would trigger the requirement that the notice be provided.

National Consumer Law Center, *Fair Debt Collection* (7th ed. 2011), §5.7.2.5.2

In the instant action, the Lawrences have pled in the alternative that if the FDCPA

Validation Notice (attached to the Foreclosure Complaint) was not an "initial communication" for

purposes of 15 U.S.C. §1692g(a), then the Post-Complaint Filings triggered the mandated

disclosures. In its Motion to Dismiss, Gilbert Garcia does not even attempt to argue that the

FDCPA Validation Notice would pass muster under 15 U.S.C. §1692g(a). *See*, e.g., *Camacho v.*

*Bridgeport Fin., Inc.*, 430 F.3d 1078 (9th Cir.2005); *Baez v. Wagner & Hunt, P.A.,* 442 F.Supp.2d

1273 (S.D.Fla.2006) [verification notice should not state that consumer should use a writing to

raise a dispute that overcomes §1692g(3) presumption by the debt collector that the debt is valid];

*Moore v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC,* 214 F.3d 872 (7th Cir. 2000)

[debt collector must disclose the dollar amount of a debt as of the date of validation notice to meet

the requirements of the plain language of the FDCPA; stating the amount owed, plus unspecified

interest, late charges, etc. violates 15 U.S.C. §1692g(a)(1)].

   3.  *The Post-Complaint Filings by Defendant Constituted "Communications"*
        *Triggering the Validation Notice Requirements.*

In its Motion to Dismiss, Gilbert Garcia contends that the "validation carve-out" of 15

16

U.S.C. §1692g(d) exonerates itself from having to provide a proper validation notice (Motion to Dismiss - p.7). Without citing any authority, Gilbert Garcia states: "[t]he statute does not limit the type of 'formal pleading' to the initial complaint." (Motion to Dismiss - p.7). Thus, according to Gilbert Garcia, the Post-Complaint Filings in the Lawrence Foreclosure Proceeding would not act as a trigger for the Validation Notice.  The position of Gilbert Garcia, however, is not supported by the plain reading of the statute.

A basic tenet of statutory construction is that a court must give effect to the plain and unambiguous language of the statute. *Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318, 1321 (11th Cir. 2005). "In other words, a court must presume that Congress said what it meant and meant what it said." *Id.,* quoting *Hary v. Marchant*, 291 F.3d 767, 760 (11th Cir.2002).

Congress used the words "formal pleading" in 15 U.S.C. §1692g(d).  Under the rules of civil procedure, pleadings are formal statements made by the parties of the operative, as distinguished from the evidential, facts upon which the claim or defense is based, and does not include filings such as motions, answers to interrogatories and requests for admissions. *Coca-Cola Bottling Co. v. Clark*, 299 So.2d 78 (1st DCA 1974).  Rule 1.110, Florida Rules of Civil Procedure, specifies the permissible types of pleadings — the original claim, counterclaim, cross-claim, third party claim, answer and affirmative defenses. *See*, Rule 1.110(a)-(d), Federal Rules of Civil Procedure; *see,* also, Rule 8, Federal Rules of Civil Procedure.

Contrary to the contention of Gilbert Garcia, if Congress had meant to exclude matters such as the Post-Complaint Filings in the validation carve-out of  §1692g(d), it would have so stated. This position is especially compelling as Congress is presumed to have known of the definition of "pleading" under the Federal Rules of Civil Procedure.

## IV.  CONCLUSION

The Lawrence Foreclosure Proceeding involved both an attempt to enforce a security interest in the Lawrence Residence and an attempt to collect a debt in the form of a deficiency in the event the value of the Lawrence Residence was less than the mortgage indebtedness.  As such, Gilbert Garcia was a debt collector for all purposes under the FDCPA.

If the position of Gilbert Garcia is taken to its ultimate conclusion, a money judgment could be entered against the Lawrences without Gilbert Garcia ever providing the statutorily mandated validation notice.  Such an approach would defeat the purpose of the validation requirements of the FDCPA.  To quote the Eleventh Circuit in the *Reese* decision, that "would create a loophole in the FDCPA.  A big one."

WHEREFORE, Plaintiffs, Kevin Lawrence, an individual, and Ayshea Lawrence, an individual, on behalf of themselves and all others similarly situated, respectfully request this Court deny the Motion to Dismiss the Amended Complaint in accordance with the above argument.

/s/ Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Facsimile
rphyu@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 1, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Jennifer Anderson Hoffman, Esquire, Marlow, Connell, Abrams, Adler, Newman & Lewis, 4000 Ponce de Leon Boulevard, Suite 570, Coral Gables, FL 33146, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/  Robert W. Murphy